THOMAS D. YANO  3780
4374 Kukui Grove Street, Suite 204
Lihue, Kaua'i, Hawai'i  96766
Telephone:  (808) 245-8686
Facsimile:  (808) 245-6771
Email:  thomasdyano@gmail.com

Attorney for Defendant
CRISTETA C. OWAN

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ATOOI ALOHA, LLC, A Nevada Limited Liability Company, CRAIG B. STANLEY, as Trustee for THE EDMON KELLER AND CLEAVETTE MAE STANLEY FAMILY TRUST; CRAIG B. STANLEY, individually, MILLICENT ANDRADE, individually, <br><br> Plaintiffs, <br><br> vs. <br><br> ABNER GUARINO, AURORA GUARINO, INVESTOR FUNDING CORPORATION, as Trustee for an unrecorded Loan Participation Agreement dated June 30, 2014; APT-320, LLC, a Hawai'i limited liability company, CRISTETA C. OWAN, an individual; ROMMEL GUZMAN; FIDELITY NATIONAL TITLE & ESCROW OF HAWAI'I and Does 1-100 Inclusive, <br><br> Defendants. | CIVIL NO. 16-00347 JMS RLP <br><br> DEFENDANT CRISTETA C. OWAN'S SEPARATE AND CONCISE STATEMENT OF FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DECLARATION OF CRISTETA C. OWAN; DECLARATION OF ROSALY DOMENDEN; DECLARATION OF MARIA CELESTE PAPA; DECLARATION OF EMILY MARIANO; EXHIBITS "A", "B","C", "D";  CERTIFICATE OF SERVICE |
| APT-320, LLC, a Hawaii Limited Liability Company, <br><br> Third-Party Plaintiffs, <br><br> vs. | *(Caption continued on next page)* |

APARTMENT OWNERS OF DIAMOND HEAD SANDS, )
)
)
)
Third-Party Defendants. )
)

## DEFENDANT CRISTETA C. OWAN'S SEPARATE AND CONCISE STATEMENT OF FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to  Rule 56.1 of the Local Rules of Practice for t he United States District Court for the district of Hawaii, Defendant CRISTETA C. OWAN ("Owan") hereby submits her Separate and Concise Statement  of Facts in support of Defendant's Motion for Summary Judgment, which is being filed concurrently herein.

| | FACTS | EVIDENTIARY SUPPORT |
|---|---|---|
| 1. | Defendant Cristeta C. Owan ("Owan") had no involvement with the Apt.320LLC real property transaction and Plaintiff, Millicent Andrade ("Millie") is not alleging Owan had any involvement with the Apt, 320, LLC  real property transaction and she is not seeking to recover anything from Owan therefor. | Paragraphs 32 & 33 of the Declaration of Cristeta C. Owan ("Owan Decl") which is attached and incorporated by reference hereto this Concise Statement of Facts ("CSF"). Excerpts from Deposition Transcript of Millicent Andrade, August 30, 2017 ("Depo Transcript"): page 254, lines 1-5 and page 269, lines 7 to 11 attached as Exhibit "A " to the instant CSF herein. |
| 2. | Owan could not have induced Millie to buy into Better Living Global Market ("BLGM") as Owan was in the same audience as Millie when Millie joined and invested in BLGM | paragraphs 6, 26, & 27, of the Owan Decl.: paragraphs 7 , of the Declaration of Rosaly Domenden ("Rose Decl.") (;: paragraphs 12, of the Declaration of Maria Celeste Papa ("Celeste Decl.") ;: paragraph 4_, Declaration of EmilyMariano ("Emily Decl."); all of which are attached and incorporated by reference hereto this Concise Statement of Facts ("CSF"). |
| 3. | Millie signed up with BLGM immediately | paragraphs 11, 12 of the Owan Decl.; |

| | | |
|---|---|---|
| | following the first group presentation of BLGM conducted by Aurora Guarino as assisted by her husband Abner Guarino on or about Sunday, September 29, 2013 | paragraphs 11, 12, of the Rose Decl.; all attached and incorporated by reference hereto this CSF herein. |
| 4. | Owan did not fraudulently induce Millie to buy into BLGM by making false representations to Millie, it was Millie's own decision *after communicating directly Abner and Aurora Guarino** and being provided with the BLGM Powerpoint Presentation ***("BLGM "Powerpoint Presentation") and which is Millie's Exhibit "1" attached to her First Amended Complaint ("FAC") herein. | * Excerpts from Deposition Transcript of Millicent Andrade, August 30, 2017 ("Depo Transcript"): page 61, lines 24 &25 and page 62 lines1 & 2 and page 258, lines 2 to 5 which are all attached as a part of Exhibit "A " to the instant ("CSF") herein.<br>**Email from Owan to Millie dated September 30, 2017 which is attached and incorporate by reference hereto as Exhibit "B " to the instant CSF.<br>***Pages 9 to 16 of 16 of the Powerpoint Presentation which are attached and incorporated by reference hereto as Exhibit"C" to the instant CSF. |
| 5. | The BLGM Powerpoint Presentation contains clear and simple disclaimers, cautionary notes and instructions regarding the Do's and Don'ts for BLGM members. | Pages 9 thru 16 of the BLGM Powerpoint Presentation are attached as Exhibit "C " to the instant CSF |
| 6. | The only allegations regarding Owan are found in paragraphs 28, 29, 30 31 and 32 found on pages 10 &11 of 28 pages of the FAC which are either untrue* and/or do not constitute fraudulent inducements for Millie to join or buy into BLGM and thus create no "genuine" issues for the trier of fact. | Copies of paragraphs 28, 29 30, 31, and 32 of the FAC are attached and incorporated by reference hereto this CSF as Exhibit "D ". |

DATED: Lihue, Kauai, Hawaii     12-18-17

THOMAS D. YANO
Attorney for Defendant
Cristeta C. Owan

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ATOOI ALOHA, LLC, A Nevada Limited Liability Company, CRAIG B. STANLEY, as Trustee for THE EDMON KELLER AND CLEAVETTE MAE STANLEY FAMILY TRUST; CRAIG B. STANLEY, individually, MILLICENT ANDRADE, individually,<br><br>Plaintiffs,<br><br>vs.<br><br>ABNER GUARINO, AURORA GUARINO, INVESTOR FUNDING CORPORATION, as Trustee for an unrecorded Loan Participation Agreement dated June 30, 2014; APT-320, LLC, a Hawai'i limited liability company, CRISTETA C. OWAN, an individual; ROMMEL GUZMAN; FIDELITY NATIONAL TITLE & ESCROW OF HAWAI'I and Does 1-100 Inclusive,<br><br>Defendants.<br><br>———————————————<br><br>APT-320, LLC, a Hawaii Limited Liability Company,<br><br>Third-Party Plaintiffs,<br><br>vs.<br><br>APARTMENT OWNERS OF DIAMOND HEAD SANDS,<br><br>Third-Party Defendants. | DECLARATION OF CRISTETA C. OWAN |

## DECLARATION OF CRISTETA OWAN

CRISTETA OWAN, HEREBY STATES THE FOLLOWING UNDER PENALTY OF PERJURY.

1. I make the following statements from personal knowledge and I am competent to do so.

2. When I first met Millicent ("Millie") Andrade over the Better Living Global Market ("BLGM") business opportunity she was a guest of a acquaintance of mine, Mrs. Rosaly ("Rose") Domenden at the first BLGM group presentation conducted by Mr. & Mrs. Abner ("Abner") and Aurora ("Aurora") Guarino in my office in Lihue on or about Sunday, September 29, 2013.

3. I had agreed to allow my other friend, Mrs. Maria Celeste Papa ("Celeste") to use my office for this inaugural meeting for BLGM on Kauai a few days earlier.

4. This first presentation and several subsequent BLGM presentations were all conducted by Aurora and supported by Abner with displays of his and Aurora's earnings from BLGM on his notebook computer in their BLGM back office.

5. Rose remembers telling her friend Millie to leave her checkbook in her car before the BLGM presentation because She knew that Millie had a tendency to be impulsive.

6. I was in the audience along with Rose, Celeste and Millie and several other persons at this first BLGM meeting on Kauai in my office.

7. At the end of Aurora's presentation Millie went directly to ask Aurora some questions and then abruptly disappeared.

8. I remember Aurora asking me if she may have said something to offend Millie.

9. Evidently this was not the case, because in fact, Millie had gone to get her checkbook from her car and returned excited.

10. Rose also remembers wondering where Millie went while everyone else was having refreshments and talking about this new business opportunity.

11. Shortly thereafter Millie returned and Rose remembers seeing Millie writing checks on the stairway ballister.

12. Upon inquiry Rose found out that Millie was signing up to buy BLGM units.

13. This compelled Rose to also sign up as she was Millie's "upline" since Rose had invited Millie to the meeting.

17. At that time, Millie had already decided to join BLGM and to buy more BLGM units but she wanted me to help her understand what the "best deal" was.

18. On September 30, 2013, Celeste sent me and I forwarded to Millie the BLGM PowerPoint presentation Aurora had used at the first BLGM meeting which contained the language "This is for illustration purposes only and no specific income is guaranteed."

19. Millie Acknowledged receiving this PowerPoint presentation on or before October 2, 2013. See Exhibit "B", which is attached and incorporated by reference thereto Owan's Concise Statement of Facts herein.

20. A couple of days later, on October 1, 2013, Millie came to my office unannounced and without an appointment to ask me about BLGM.

21. After completing the task at hand I agreed to sit down with Millie to have her analyze the BLGM offerings.

22. Thus, we sat down and started to analyze the various offerings to try to figure it out together for the first time.

23. Near the end of this unscheduled hour or so Millie suddenly exclaimed "well, that's it then!" referring to the fifty (50) unit package for BLGM.

24. Millie said she had decided to buy fifty (50) BLGM units at a cost of about $37,500, which surprised me as I did not know that Millie had that kind of money to spend on this new business opportunity.

25. I did not tell Millie anything akin to this was the "real deal" or that there were any guarantees of return or any specific return on her purchases. Millie decided to make these purchases on her own.

26. I did forward the BLGM PowerPoint via email on October 1st or 2nd, 2013. In fact, Millie states twice in her deposition that it was "my decision".(depo transcripts .

27. On October 2, 2013, Millie sent me an email stating, inter alia,"Thanks for the PowerPoint. I will make sure I comprehend what the author is trying to convey here.". See page 2 of Exhibit "B".

28. Millie purchased BLGM units shortly thereafter and then subsequently Millie purchased fifty (50) more for herself . Millie had sent her checks directly to Aurora in California.

29. I did not sell any BLGM units to Millie.

30. I honestly thought I had found a new friend in Millie at that time so when Millie would subsequently come in repeatedly unannounced and without an appointment I would typically make time to help her figure things out about BLGM.

31. With regard to the real estate transactions regarding Apt. 320, LLC between Aurora, Abner and Abigail Guarino, which Millie has also made a subject for this lawsuit, I had no involvement whatsoever. By the time I heard anything about these real estate

for BLGM units transactions the Hawaii property had already been transferred to Ms. Abigail Guarino.

32. And, in fact, during her deposition, Millie admitted and stated that she was not alleging that I had anything to do with the Apt. 320, LLC transfer in any manner regarding these real estate transactions. (Millie's oral depo transcripts pg. 254)

33. In the end, I also believed in BLGM and lost considerable sums of money in the neighborhood of $30,000.00 with the BLGM business opportunity.


DATED:  Lihue, Kaua'i, Hawai'i _December 17, 2017_


CRISTETA C. OWAN

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ATOOI ALOHA, LLC, A Nevada Limited Liability Company, CRAIG B. STANLEY, as Trustee for THE EDMON KELLER AND CLEAVETTE MAE STANLEY FAMILY TRUST; CRAIG B. STANLEY, individually, MILLICENT ANDRADE, individually, | DECLARATION OF ROSALY DOMENDEN |
| Plaintiffs, | |
| vs. | |
| ABNER GUARINO, AURORA GUARINO, INVESTOR FUNDING CORPORATION, as Trustee for an unrecorded Loan Participation Agreement dated June 30, 2014; APT-320, LLC, a Hawai'i limited liability company, CRISTETA C. OWAN, an individual; ROMMEL GUZMAN; FIDELITY NATIONAL TITLE & ESCROW OF HAWAI'I and Does 1-100 Inclusive, | |
| Defendants. | |
| APT-320, LLC, a Hawaii Limited Liability Company, | |
| Third-Party Plaintiffs, | |
| vs. | |
| APARTMENT OWNERS OF DIAMOND HEAD SANDS, | |
| Third-Party Defendants. | |

## DECLARATION OF ROSALY DOMENDEN

ROSALY DOMENDEN, HEREBY STATES THE FOLLOWING UNDER PENALTY OF PERJURY.

1. I make the following statements from personal knowledge and I am competent to do so.

ROSALY DOMENDEN, HEREBY STATES THE FOLLOWING UNDER PENALTY OF PERJURY.

1. I make the following statements from personal knowledge and I am competent to do so.
2. On or about September 29, 2013 I was invited by an acquaintance, Mrs. Maria Celeste Papa ("Celeste"), to attend a meeting at Cristeta C. Owen's ("Cristeta") office in Lihue, Kauai, Hawai'i.
3. I did in turn invite Plaintiffs Ms. Millicent Andrade ("Millie") to this meeting because we had both done network marketing a few times before.
4. Millie was hesitant at first so I told her "we are just there to listen with an open mind, and if you want, you can leave your checkbook in your car because I don't know what it's all about".
5. Nonetheless, Millie decided to come and I met her at Cristeta's Office that day.
6. At this meeting we met Mr. Abner and Mrs. Aurora Guarino for the first time and we listened to their presentation about Better Living Global Market ("BLGM").
7. Cristeta joined us in the audience.
8. Aurora made the main presentation and Abner would show members of the audience his impressive earnings from BLGM in his BLGM "back office" on his notebook computer.
9. When the presentation was over Millie seemed very interested and she went to ask the Guarinos some questions and conversed with them for quite a while.
10. While I was having a few refreshments in the lobby area Millie passed by me and said "now I have to go down and get my checkbook from my car". I was shocked when I heard this statement.
11. The next thing I remember was seeing Millie writing a check on the stairway railings next to me.
12. When I asked Millie what she was doing, she said she was joining and buying "the max, of course". This meant seven (7) BLGM units at that time.
13. I remember that since Millie signed up so quickly that day it compelled me to sign up that day as well because I had invited Millie so I had to sign up so she would sign up under me.

DATED: Lihue, Kaua'i, Hawai'i ___12/17/17_____

_____
ROSALY DOMENDEN

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ATOOI ALOHA, LLC, A Nevada Limited Liability Company, CRAIG B. STANLEY, as Trustee for THE EDMON KELLER AND CLEAVETTE MAE STANLEY FAMILY TRUST; CRAIG B. STANLEY, individually, MILLICENT ANDRADE, individually,<br><br>                    Plaintiffs,<br><br>        vs.<br><br>ABNER GUARINO, AURORA GUARINO, INVESTOR FUNDING CORPORATION, as Trustee for an unrecorded Loan Participation Agreement dated June 30, 2014; APT-320, LLC, a Hawai'i limited liability company, CRISTETA C. OWAN, an individual; ROMMEL GUZMAN; FIDELITY NATIONAL TITLE & ESCROW OF HAWAI'I and Does 1-100 Inclusive,<br><br>                    Defendants.<br>_____<br>APT-320, LLC, a Hawaii Limited Liability Company,<br><br>                    Third-Party Plaintiffs,<br>        vs.<br><br>APARTMENT OWNERS OF DIAMOND HEAD SANDS,<br><br>                    Third-Party Defendants. | DECLARATION OF MARIA CELESTE PAPA |

## DECLARATION OF MARIA CELESTE PAPA

MARIA CELESTE PAPA , HEREBY STATES THE FOLLOWING UNDER PENALTY OF PERJURY.

1. I make the following statements from personal knowledge and I am competent to do so.
2. Towards the end of September, 2013, a friend of mine from California called me on Kauai and told me he wanted to see me to show me something.

3. On the following day I picked him up at the Lihue airport together with a couple by the names of Abner and Aurora Guarino.
4. At first we went to a restaurant to eat lunch but the restaurant was full and noisy so I decided to call and ask my friend Mrs. Cristeta Owan if I could use her office to meet with some friends.
5. Cristeta agreed and so we went to her office to meet.
6. Cristeta was busy and actually left to do her business errands at that time.
7. I took the Guarinos back to the airport that same day/evening.
8. A couple days later, on or about September 29, 2013 Mr. & Mrs. Guarino and my friend came back to Kauai to give a group presentation about Better Living Global Market ("BLGM").
9. The meeting was again held in Cristeta Owan's office.
10. That meeting was the Guarinos second trip to Kauai but the first time they were able to meet with a group including Millicent Andrade ("Millie") who was invited by Rosaly Domenden ("Rose").
11. Aurora Guarino conducted the entire meeting with her husband Abner who went around to show the invitees the Guarinos' impressive earnings from the BLGM business they were sharing.
12. Cristeta did not make any presentations of BLGM at this first group meeting.
13. Cristeta was/is just a very accommodating hostess for her friends like me.

DATED:  Lihu'e, Kaua'i, Hawai'i _____12/17/2017_____

_Ma. Celeste Papa_
MARIA CELESTE PAPA.

12

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ATOOI ALOHA, LLC, A Nevada Limited Liability Company, CRAIG B. STANLEY, as Trustee for THE EDMON KELLER AND CLEAVETTE MAE STANLEY FAMILY TRUST; CRAIG B. STANLEY, individually, MILLICENT ANDRADE, individually,<br><br>Plaintiffs,<br><br>vs.<br><br>ABNER GUARINO, AURORA GUARINO, INVESTOR FUNDING CORPORATION, as Trustee for an unrecorded Loan Participation Agreement dated June 30, 2014; APT-320, LLC, a Hawai'i limited liability company, CRISTETA C. OWAN, an individual; ROMMEL GUZMAN; FIDELITY NATIONAL TITLE & ESCROW OF HAWAI'I and Does 1-100 Inclusive,<br><br>Defendants.<br><br>APT-320, LLC, a Hawaii Limited Liability Company,<br><br>Third-Party Plaintiffs,<br><br>vs.<br><br>APARTMENT OWNERS OF DIAMOND HEAD SANDS,<br><br>Third-Party Defendants. | CIVIL NO. 16-00347 JMS RLP<br><br>DECLARATION OF EMILY MARIANO |

DECLARATION OF EMILY MARIANO

EMILY MARIANO, HEREBY STATES THE FOLLOWING UNDER PENALTY OF PERJURY.

1.  I make the following statements from personal knowledge and I am competent to do so.

2. On or about September 29, 2013 I was invited by Mrs. Celeste Papa to attend a meeting to evaluate a business presentation in Mrs. Cristeta Owan's office.

3. I knew many of the attendees.

4. Cristeta Owan, our hostess, and Millicent Andrade ("Millie") were also in the audience.

5. The presentation was conducted by visitors from the mainland.  Their names were Abner and Aurora Guarino.

6. At the end of Aurora's presentation, her husband, Abner Guarino also gave support and more details about the business and shared with us their substantial earnings from this business called Better Living Global Market "BLGM").

7. Cristeta did not make the BLGM presentation that day..

8. After the presentation we all stayed for refreshments and many of us noticed that Milicent "Millie" Andrade, who had been talking to Aurora, left abruptly.

9. Rosaly Domenden told us that Millie was going to get her checkbook from her car so she could get into this business that night.

10. In less than thirty (30) minutes Millie was back and full of excitement telling people that she was going to sign up.

11. A few days later I also heard that Millie had signed up for the biggest package BLGM had to offer.

12. It was common knowledge at that time that Millie was a big hitter in BLGM.

13. We all knew/know BLGM is like any other business, i.e. there is always a risk and no guarantee.


DATED:  Lihue, Kaua'i, Hawai'i"   *Dec · 17, 2017*


EMILY MARIANO

1    them; correct?

2    A.    Yes.

3    Q.    And because you made the representations about

4    the profits that they could make on those investments;

5    correct?

6         MR. ECOFF:  Objection.  Argumentative.

7         THE WITNESS:  I didn't know how it worked.

8    BY MR. REMIS:

9    Q.    Did you tell them how it worked?

10   A.    No.

11   Q.    Did they ask how it worked?

12   A.    They seen the presentation and made up their --

13   Q.    How much money did John Seto --

14   A.    -- own mind up.

15        MR. ECOFF:  Let her finish her answer.

16        MR. REMIS:  I'm sorry.  I'm sorry.

17        MR. ECOFF:  Finish your answer.  You said they

18   saw the presentation, and you said something that I

19   don't know if the reporter got.

20        THE WITNESS:  Me?

21        MR. ECOFF:  Yeah.  Finish your answer.

22        THE WITNESS:  Somebody else made the

23   presentation.  All I did was invite these people, and

24   they made up their own mind just like I did when I seen

25   the presentation and was promised if you buy these

EXHIBIT "A"

62

```
 1    stocks, they will be worth three times their amount in a

 2    certain amount of time.

 3    BY MR. REMIS:

 4    Q.      90 days?

 5    A.      Three months, yes.

 6    Q.      90 days.  Did you believe that?

 7    A.      Yes.  Why wouldn't I?

 8    Q.      And after 90 days, did you ever make a demand for

 9    your money back?

10    A.      No, because I was told that I should wait and let

11    these stocks mature.  Just leave it in there.  It will

12    mature.  We were told to wait.  Wait.  Don't touch

13    nothing.  Just let it mature.  Whatever stocks I don't

14    understand do, let it mature.

15    Q.      Did you ask when they would mature?

16    A.      I only knew -- I only know that they said after

17    90 days, you can triple your investment.

18    Q.      Good.  And after 90 days, did you triple your

19    investment?

20    A.      No.

21    Q.      Did you complain to anybody about that?

22    A.      No.

23    Q.      Did you ask anybody --

24            MR. ECOFF:  He means at any time.  Just so

25    you're clear, he means at any time did you say anything
```

EXHIBIT "A"

254

1    Q.      Are you alleging in any way that Cristeta Owan

2    had anything to do with the Apartment 320 LLC transfer?

3           MR. ECOFF:   Object to the form of the question.

4    Overbroad.   But you can answer.

5           THE WITNESS:   No.

6    BY MR. YANO:

7    Q.      Why are you suing Cristeta Owan in 2017?

8           MR. ECOFF:   Object to the form to the extent it

9    calls for an attorney-client privileged communication.

10   So don't discuss anything your lawyers have said to you.

11   If your response should require that, then don't answer.

12   BY MR. YANO:

13   Q.      I'm not asking what you discussed with any of

14   your attorneys, because you were with Michael Green and

15   Brian Mackintosh before and now with Mr. Ecoff.   I'm not

16   asking you what you discussed with them.   I want to know,

17   because you were the client for all these attorneys, why

18   are you suing Cristeta Owan two years after you filed the

19   first complaint?   From my understanding, just a couple

20   days.   You first filed in 2015.   So the first question is

21   why are you suing Cristeta Owan?

22          MR. ECOFF:   And, again, same instruction would

23   apply.

24          MR. YANO:   Are you instructing her not to

25   answer?

EXHIBIT "A"

1   stocks," and that's exactly what happened.

2   Q.      Did anyone coerce or force you to sign up, or

3   wasn't it your own decision in the end?

4   A.      My own decision.

5   Q.      Okay.  As a managing member of Atooi Aloha, LLC,

6   did you not have the responsibility to prepare tax

7   returns?

8        MR. ECOFF:  Objection.  Calls for a legal

9   conclusion.  Object to the form.

10       MR. YANO:  That's not a legal conclusion.  I'm

11  asking does she have the job of keeping track of the

12  books because there's money coming in; right?  For

13  rentals.

14       MR. ECOFF:  Well, objection.  She said there was

15  no rentals.  So why would there be money coming in?

16       MR. YANO:  She said she was losing rent at

17  320 -- Apartment 320 LLC.

18       THE WITNESS:  Could have if we still owned it.

19  BY MR. YANO:

20  Q.      Okay.  So who would keep track of that?

21       MR. ECOFF:  Objection.  Foundation.  Speculation.

22  BY MR. YANO:

23  Q.      Did you not testify that you were losing rents?

24  A.      They were renting it.  It was renting when

25  they -- it was in their possession.

```
 1              THE WITNESS:  The property, money, time.
 2   BY MR. YANO:
 3   Q.       The property, but --
 4            Okay.  Go ahead.
 5   A.       Compensation.  And I'm not like Craig.  He wants
 6   to put them in jail, but whatever.
 7   Q.       I heard that.  But you said earlier that you're
 8   not alleging Cristeta had anything to do with the
 9   Apartment 320 transaction; correct?  That's what you
10   testified earlier?
11   A.       Yes.
12   Q.       So -- but you're including the property.  She had
13   nothing to do with that.  Why would you seek to recover
14   the property from my client?
15            MR. ECOFF:  Objection.  Argumentative.  Assumes
16   facts.  Object to the form.  Also to the extent it calls
17   for attorney-client communication.
18   BY MR. YANO:
19   Q.       Can you tell me, not telling me what you
20   discussed with your attorney, but yourself?
21   A.       No.
22   Q.       You're seeking to recover the property from
23   Cristeta also?
24   A.       No.
25   Q.       Okay.  That's all I have for now.  Thank you.
```

EXHIBIT "A"

Cristeta C. Owan, EA
 4374 Kukui Grove St. Suite 202
Lihue, HI  96766
808-245-7780 work
808-651-9727 cell

Disclaimer
This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.

---

**From:** Millicent Andrade <millimoana@gmail.com>
**To:** Cristeta Owan <cristetao1@yahoo.com>
**Sent:** Wednesday, October 2, 2013 2:56 PM
**Subject:** Re: Fw: BLGM and adding unitsppt

Aloha Cris:

EXHIBIT "B"

Thanks for the power point - I will make sure I comprehend what the author is trying to convey here. I have already spoken with Aurora and Abner earlier this morning and have sent in my seed money for 50 units VP. Once Abner receives my seed money( sent by priority mail to be rec'd by Thurs.) he will input me as VP and stagger the units to maximize the payout plan. He estimates that it will take me approx. 2.5 months to receive the original investment. That is fine by me. Anyway have a safe and productive travel to Oahu. So much to be grateful for the Lord's grace and mercy.

Shalom:

Milli

On 10/1/13, Cristeta Owan <cristetao1@yahoo.com> wrote:
>
>
>
>  your powerpoint to master!
>
>
>
>
>
>
>
>
>
>
> Cristeta C. Owan, EA
>  4374 Kukui Grove St. Suite 202
> Lihue, HI  96766
> 808-245-7780 work
> 808-651-9727 cell
>
> Disclaimer
> This email and any files transmitted with it are confidential and intended
> solely for the use of the individual or entity to whom they are addressed.
> If you have received this email in error please notify the system manager.
> This message contains confidential information and is intended only for the
> individual named. If you are not the named addressee you should not
> disseminate, distribute or copy this e-mail. Please notify the sender
> immediately by e-mail if you have received this e-mail by mistake and delete
> this e-mail from your system. If you are not the intended recipient you are
> notified that disclosing, copying, distributing or taking any action in
> reliance on the contents of this information is strictly prohibited.

EXHIBIT "B"

> >
> >
> >
> ----- Forwarded Message -----
> From: Maria Papa <celeste27@hawaiiantel.net>
> To: cristetao1@yahoo.com
> Sent: Monday, September 30, 2013 9:51 PM
> Subject: BLGM and adding unitsppt
> >
> >
> >
> >
> Hi Cris,
> I thought I already send u the ppt. Well, here it is.
> >
> Celeste


--

Millicent Andrade
808 346 3671

EXHIBIT "B"



# 1. Retail Bonus

## Earn 20% Commission on any Unit Sold

## $1,160 x 20% = $232



Level 1

## Four Directly Sponsored Affiliates

## Pays You $928 – Next Day

* 90% of your Commission is paid into your Electronic Wallet and 10% is paid into your Reserves Wallet. PWALLETS 00009
* This is for illustration purposes only and no specific income is guaranteed or implied.

EXHIBIT "C"



# 2. Leadership Bonus
## Earn 3% Commission on any Unit Sold

- Manager          —       3 Levels
- Director          —       4 Levels
- Vice President    —       5 Levels

$$\$1,160 \times 3\% = \$35$$



* 90% of your Commission is paid into your Electronic Wallet and 10% is paid into your Reserves Wallet.
* This is for illustration purposes only and no specific income is guaranteed or implied.

Updated: April 4, 2013



# 3. BINGO Bonus

## Earn $65 Commission for every binary pair

### (No recruiting required – Can come from spillover – Infinite Depth)



## Maximum 8 Bingos per day / per unit
## $520 per day potential / per unit

* 90% of your Commission is paid into your Electronic Wallet and 10% is paid into your Reserves Wallet.
* This is for illustration purposes only and no specific income is guaranteed or implied.

EXHIBIT "C"

Updated: April 4, 2013   Case 1:16-cv-00347-JMS-RLP   Document 30-1   Filed 05/08/17   Page 12 of 16   Page
253



# 4. Profit Share

## Receive 99 Payouts from Company Profits

(The example below illustrates how the payouts work)

| Total Profit | X1 | X2 | X3 | | |
|---|---|---|---|---|---|
| | $20 | $16 | $24 | | |
| Cash Acct. (eWallet) | $10 | $ 8 | $12 | 99 TIMES ⟹ | $833* eWallet |
| Renewal Account (sWallet) | $10 | $ 8 | $12 | 99 TIMES ⟹ | $833* sWallet |

## Renew your unit after 99 times

### Net cost to renew unit – Approx. $280 *(from eWallet)*

PLAINTIFFS 00012

* This is for illustration purposes only and no specific income is guaranteed or implied.

EXHIBIT "C"

Updated: April 4, 2013



# 5. Retirement Plan

## 2 x 12 Forced-Filled Global Matrix

### Costs $46.50 mo. from Renewal Account / Earn $3.87 mo. per unit



12 Levels
8,190 Units

$31,700 Mo.

Personal
Directs
Indirects
Spillover

* 90% of your Commission is paid into your Electronic Wallet and 10% is paid into your Reserves Wallet.
* This is for illustration purposes only and no specific income is guaranteed or implied.

EXHIBIT "C"

Updated: April 4, 2013   Case 1:16-cv-00347-JMS-RLP   Document 30-1   Filed 05/08/17   Page 14 of 16   PageID #: 255



# Purchase Strategy

## How many units should you purchase?

**Good Option**      **Better Option**       **Even Better Option**

(A)              (A)   $70 Leadership Bonus        (A)   $350 Leadership Bonus

(B) $65 (C)        (B) $65 (C)

$232    $232       $232    $232

$65 (D) (E) (F) (G) $65

$65    $65

$232  $232  $232  $232

$1,175          $3,525              $8,225
-  0 = BONUSES =  -  539 net         - 1,859 net
$1,175          $2,986   = NET COST =  $6,366

**Best Option – 15 Units - VP**      **Better than Best – 50 Units - VP**

**Cost $17,625 – Net: $12,642**      **Cost $58,750 – Net: $37,525**

PLAINTIFFS 00014

\* Purchase units responsibly.  Do not purchase more units than you can afford.  Estimates only–not a guarantee of income.

EXHIBIT "C"

*Better Living*
GLOBAL MARKETING
A subsidiary of MSP Power Marketing

# YOUR ONLY DECISION SHOULD BE –

## HOW MANY UNITS CAN I PURCHASE RIGHT NOW!

## AND WHAT DO I HAVE TO DO TO MAKE IT HAPPEN!

\* Purchase units responsibly.  Do not purchase more units than you can afford..

PLAINTIFFS 00015

14

EXHIBIT "C"

Updated: April 4, 2013   Case 1:16-cv-00347-JMS-RLP   Document 30-1   Filed 05/08/17   Page 16 of 16
257



GLOBAL MARKETING
*A subsidiary of* MSP Power Marketing

# DOs and DON'Ts

## DON'T

- Tell people this is an Investment
- Talk about Rates of Return or Interest
- Tell people Profit Share is Guaranteed
- Post Videos, Presentation or Advertisements Online
- Make changes to presentation to include your own figures
- Tell people this is a Tax-Free business
- Make Income Claims

## DO

- Explain that a product is being purchased – Bids for Penny Auction
- Explain that Bids must be used in order to receive Profit Share
- Make it clear this is NOT an investment
- Explain Profit Share is NOT guaranteed
- Explain that every business has inherent risk
- Use Approved Presentation
- Share with friends, family and colleagues

PLAINTIFFS 00016

15

EXHIBIT "C"

Case 1:16-cv-00347-JMS-RLP Document 203 Filed 12/18/17 Page 31 of 35 PageID #:
1485
Case 1:16-cv-00347-JMS-RLP Document 30 Filed 05/08/17 Page 10 of 28 PageID #:
223

28. On or around Sunday, September 29, 2013, Defendants ABNER and

AURORA GAURINO and Defendant CRISTETA C. OWAN, a certified public

accountant ("CPA") gave PowerPoint presentation ("PowerPoint presentation") to,

Plaintiff MILLICENT ANDRADE and others attending the seminar, urging them

to purchase shares, also referred to herein as "units" of BLGM, and represented

that they would triple their investment in three to six months. See, PowerPoint

Presentation attached hereto as Exhibit "1" ("PowerPoint Presentation").

29. The PowerPoint Presentation took place at the offices of CRISTETA

C. OWAN, a Certified Public Accountant located at 4374 Kukui Grove St.,

Number 202, Lihue, Hawai`i 96766.

30. Defendant CRISTETA OWAN started off the presentation by saying:

> "I know some of you might be skeptical, I was skeptical,
> but I have investigated this opportunity, and it's the real
> deal. It really works. It's a great investment."

31. During the power point presentation, ABNER and AURORA

GAURINO were sitting next to CRISTETA C. OWAN. After the PowerPoint

presentation was over, ABNER and AURORA GARINO, and CRISTETA C.

OWAN did a question and answer session with the audience, and then went

around the room to meet with potential investors, including MILLICENT

ANDRADE. ABNER and AURORA discussed the investment opportunity with

MILLICENT ANDRADE. ABNER and AURORA GUARINO told MILLICENT

EXHIBIT "D"

Case 1:16-cv-00347-JMS-RLP  Document 203  Filed 12/18/17  Page 32 of 35  PageID #:
Case 1:16-cv-00347-JMS-RLP  Document 197  Filed 05/08/17  Page 11 of 28  PageID #:
224

ANDRADE that they would guarantee any investment she made, or any business she was part of made, would receive triple the amount invested within 90 days. He went on to say: "In fact if you are not satisfied with the business opportunity, I will purchase the units you buy."

32.     Relying on the above representations and guarantees of ABNER and AURORA GUARINO, and the great endorsement by CRISTETA C. OWAN who claimed it was a safe deal that really worked, and the slick PowerPoint Presentation, Plaintiff MILLICENT ANRADE  subsequently said she was willing to purchase shares or "units" of BLGM from Defendants ABNER and AURORA GAURINO.

33.     On October 2, 2013, the STANLEY FAMILY TRUST delivered a $9,767 check to "Bliss 4 Life," the account name of ABNER and AURORA GAURINO at BLGM, for purchases of BLGM shares.

34.     On October 2, 2013 and October 3, 2013 the STANLEY FAMILY TRUST delivered checks for $8,250 each to ABNER and AURORA GAURINO made to "Cash" for purchases of BLGM shares.

35.     On October 9, 2013 the STANLEY FAMILY TRUST delivered checks made to So Chau Pui in the amount of $5,000 for the purchase of BLGM shares from ABNER and AURORA GAURINO's BLGM account.

EXHIBIT "D"

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

ATOOI ALOHA, LLC, A Nevada Limited Liability Company, CRAIG B. STANLEY, as Trustee for THE EDMON KELLER AND CLEAVETTE MAE STANLEY FAMILY TRUST; CRAIG B. STANLEY, individually, MILLICENT ANDRADE, individually,

            Plaintiffs,

vs.

ABNER GUARINO, AURORA GUARINO, INVESTOR FUNDING CORPORATION, as Trustee for an unrecorded Loan Participation Agreement dated June 30, 2014; APT-320, LLC, a Hawai'i limited liability company, CRISTETA C. OWAN, an individual; ROMMEL GUZMAN; FIDELITY NATIONAL TITLE & ESCROW OF HAWAI'I and Does 1-100 Inclusive,

            Defendants.

_____

APT-320, LLC, a Hawaii Limited Liability Company,

            Third-Party Plaintiffs,

vs.

APARTMENT OWNERS OF DIAMOND HEAD SANDS,

            Third-Party Defendants.

_____

CIVIL NO. 16-00347 JMS RLP

CERTIFICATE OF SERVICE

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and accurate copy of the foregoing will be served on the following parties by United States mail, postage prepaid to the following address:

DENNIS W. CHONG KEE, Esq.
W. KEONI SHULTZ, Esq.
CHRISTOPHER T. GOODIN, Esq.
dchongkee@cades.com
wshultz@cades.com
cgoodin@cades.com

LAWRENCE C. ECOFF, Esq.
ALBERTO J. CAMPAIN, Esq.
GINNIN G. KIM, Esq.
ecoff@ecofflaw.com
camapain@ecofflaw.com
kim@ecofflaw.com

Attorneys for Plaintiffs
ATOOI ALOHA, LLC, CRAIG B.STANLEY,
as Trustee for THE EDMON KELLER and CLEAVETTE
MAE STANLEY FAMILY TRUST;
CRAIG B. STANLEY, Individually; and
MILLICENT ANDRADE, individually
Attorneys for Plaintiffs
jrrhnl@aol.com
rdelawoffice@gmail.com

JOHN R. REMIS JR., Esq.
ROBERT D. EHELER, JR., Esq,
jrrhnl@aol.com
rdelawoffice@gmail.com

Attorneys for Defendants
ABNER GAURINO, AURORA GAURINO,
And ABIGAIL GAURINO

WAYNE P. NASSER, Esq.
wnasser@awlaw.com

Attorney for Defendants
ROMMEL GUZMAN and
FIDELITY NATIONAL TITLE &
ESCROW OF HAWAII

CHARLES A. PRICE, Esq.
cprice@koshibalaw.com

WILLIAM J. PLUM, Esq.
wplum@plumlaw.com

Attorneys for Defendants
APT-320, LLC and INVESTORS
FUNDING CORPORATION

I HEREBY CERTIFY that on the date indicated below a true and correct copy of the foregoing was served upon the following parties via U.S. mail:

PAMELA J. SCHELL, Esq.
Anderson Lahne & Fujisaki
733 Bishop Street, Suite 2301
Honolulu, Hawaii 96813
pschell@alf-hawaii.com

DATED:  Lihue, Kauai, Hawaii _____12-18-17_____

THOMAS D. YANO
Attorney for Defendant
Cristeta C. Owan