IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ATOOI ALOHA, LLC, ET AL.,<br><br>    Plaintiffs,<br><br>  vs.<br><br>ABNER GAURINO, ET AL.,<br><br>    Defendants.<br>_____<br><br>AND RELATED CROSSCLAIMS AND COUNTERCLAIMS.<br>_____ | Civ. No. 16-00347 JMS-RLP<br>ORDER RE: MOTIONS FOR SUMMARY JUDGMENT AND MOTION FOR INTERLOCUTORY DECREE OF FORCLOSURE |

## ORDER RE: MOTIONS FOR SUMMARY JUDGMENT AND MOTION FOR INTERLOCUTORY DECREE OF FORECLOSURE

## I. INTRODUCTION

Plaintiffs Atooi Aloha, LLC ("Atooi Aloha"), Craig Stanley ("Stanley") (individually and as trustee for the Edmon Keller and Cleavette Mae Stanley Family Trust (the "Trust")), and Millicent Andrade ("Andrade") (collectively, "Plaintiffs") claim they were fraudulently induced to invest approximately $500,000 in cash and real property in a Ponzi or pyramid scheme run through "Bidders Paradise," a penny auction site affiliated with a Hong Kong corporation known as Better Living Global Marketing ("BLGM").

Before the court are three motions: (1) Defendants Fidelity National Title & Escrow of Hawaii, Inc. and Rommel Guzman's (collectively, "Fidelity")

Motion for Summary Judgment, ECF No. 166, and Defendants Abner and Aurora Gaurino (collectively the "Gaurinos")[1] and their daughter Abigail Gaurino's Motion for Joinder therein, ECF No. 191; (2) Defendant Cristeta C. Owan's ("Owan") Motion for Summary Judgment, ECF No. 202; and (3) Defendant APT-320, LLC's ("APT-320") Motion for Summary Judgment and for Interlocutory Decree of Foreclosure, ECF No. 164. For the following reasons, Fidelity's Motion and APT-320's Motion are GRANTED, but the Motion for Joinder is DENIED, and Owan's Motion is DENIED.

## II. BACKGROUND

**A.    Factual Background**

According to the First Amended Complaint ("FAC"), Owan and the Gaurinos gave a presentation at Owan's office urging attendants, including Andrade, to purchase "shares" or "units" of BLGM, promising that investors would triple their investment within three to six months. FAC ¶ 28-29, ECF No. 30. Owan called the "opportunity" a "safe" and "great investment," and "the real deal" that "really works." *Id*. at ¶¶ 30, 32. The Gaurinos assured Andrade that they would buy any units she purchased if she were not "satisfied with the business opportunity." *Id*. ¶ 31.

---

[1] The court uses "the Gaurinos" to refer collectively only to Abner and Aurora Gaurino. When referring to Abigail Gaurino (or Abner or Aurora Gaurino individually) the court uses the party's first name.

2

Between October 2, 2013 and November 15, 2013, Plaintiffs paid the Gaurinos over $61,000 for BLGM stock using electronic funds transfers or checks variously made out to "Cash," "Bliss 4 Life," (the Gaurinos' BLGM account), and an individual named So Chau Pui. *Id.* ¶¶ 33-36. Then on February 13, 2014, Atooi Aloha entered into an escrow agreement to purchase 333 shares of BLGM by transferring title to a condominium (the "Diamond Head Sands Property" or the "Property") to Abigail. *Id.* ¶ 37. According to Plaintiffs, the Gaurinos told Plaintiffs that they would return Plaintiffs' cash and real property, if asked. *Id.* ¶ 43. "For escrow purposes," however, the Gaurinos told Plaintiffs "that they must state on the Seller's Settlement Statement that [Abigail] paid them $300,000 for the Diamond Head Sands Property." *Id.* ¶ 38. Fidelity served as the escrow company for the transaction.

Following the transfer, Abigail obtained a $220,000 loan from Investors Funding Corporation ("IFC"). She signed an interest-only Note in favor of IFC for that amount, which is secured by a Mortgage on the Property. ECF Nos. 165-3 to -4. IFC then assigned the Mortgage to APT-320. ECF No. 165-5. Abigail has failed to repay the amounts owed. Joseph Gedan Decl. ¶ 9, ECF No. 165-1.

Plaintiffs allege that they never received certificates for shares that they purchased. FAC ¶ 72. They further allege that such stock is "worthless" and

3

that they have not received any of the promised returns, either on their investment or of their cash and property. *Id*. ¶¶ 40, 41-46.

**B.     Procedural Background**

The FAC recites eight causes of action: Counts One through Three assert violations of the Securities Exchange Act, including the unregistered and fraudulent sale of securities; Counts Four through Six allege state-law fraud claims under both Hawaii statute and the common law; Count Seven seeks an imposition of a constructive trust on the Diamond Head Sands Property; and Count Eight seeks to quiet title to the Property in the name of Craig B. Stanley, "as Trustee . . . or otherwise as [he] may so direct." FAC at 14-25.

Defendant APT-320 filed a Crossclaim against Fidelity, Owan, Abigail and the Gaurinos and a Counterclaim against Plaintiffs asserting its right to foreclose on the Property. ECF No. 40. It filed a First Amended Crossclaim and Counterclaim on June 6, 2017. ECF No. 57. And it a filed Third-Party Complaint against the Association of Apartment Owners of Diamond Head Sands ("the Association") on September 26, 2017, based on a Notice of Lien the Association recorded for common expenses owed to it, claiming that the Association's interests in the Property, "if any, are junior or subordinate to APT-320's Mortgage, Assignment of Rents and Security Agreement." ECF No. 145 ¶ 11.

Fidelity filed a Crossclaim against Abigail, the Gaurinos, and Owan, asserting that, should Plaintiffs recover against it, "then one some or all of Cross-Claim Defendants are liable to Fidelity." ECF Nos. 46 and 46-1 ¶ 4.

Abigail and the Gaurinos filed a Counterclaim against Plaintiffs, ECF No. 52, and a Crossclaim against Fidelity, asserting that should Plaintiffs prevail against them, they are entitled to indemnification and damages. ECF No. 53.

APT-320 filed its Motion for Summary Judgment and for Interlocutory Decree of Foreclosure on October 25, 2017. ECF No. 164. No opposition to that motion has been filed.

Fidelity filed its Motion for Summary Judgment the same day. ECF No. 166. Plaintiffs filed an Opposition, ECF No. 211, and Fidelity replied, ECF No. 224. Abigail and the Gaurinos filed their Motion for Joinder on November 7, 2017. ECF No. 191. Plaintiffs opposed that Motion, ECF No. 213, and Abigail and the Gaurinos replied, ECF No. 222. All other parties filed Statements of No Position, ECF Nos. 207, 210, 221, although Fidelity's Statement is qualified in one respect, ECF No. 207.

Owan moved for summary judgment on December 18, 2017. ECF No. 202. Plaintiffs opposed the Motion on January 1, 2018, ECF No. 215, and Owan replied on January 9, 2018, ECF No. 226.

A hearing was held on January 22, 2018.

5

## III. **STANDARD OF REVIEW**

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden initially lies with the moving party to show that there is no genuine issue of material fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Nevertheless, "summary judgment is mandated if the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" *Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is material if the resolution of the factual dispute affects the outcome of the claim or defense under substantive law governing the case. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex*, 477

U.S. at 323-24. "There is no genuine issue of fact if the party opposing the motion 'fails to make an adequate showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (quoting *Celotex*, 477 U.S. at 322). Moreover, there is no genuine issue of material fact if, taking the record as a whole, a rational trier of fact could not find in favor of the non-moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586; *Taylor*, 880 F.2d at 1045.

## IV. **DISCUSSION**

### A. Fidelity's Motion for Summary Judgment

Although most counts in the FAC are directed at "Defendants" generally, the only factual allegation against Fidelity appears in a single paragraph in Count Seven. That paragraph states in its entirety,

> Title of the [Diamond Head Sands] Property passed to ABIGAIL GAURINO despite the fact that the escrow was told that no transfer of ownership of the Property was to take place until the shares [of BLGM stock] were actually received, and the value of shares on that date could be determined. FIDELITY agreed no[t] to close escrow without proof the share[s] had been delivered and of their value. FIDELITY closed escrow without any receipt of any shares, and without the permission of Craig B[.] Stanley, in any capacity or at all.

FAC ¶ 76.

To the extent that this allegation constitutes a claim for breach of escrow instructions, Fidelity contends that the only Plaintiff with standing to assert such a claim is Atooi Aloha — the only plaintiff who was also a party to the Escrow Agreement. But it contends such a claim fails because the Escrow Agreement did not contain the promises or instructions alleged, and there is no evidence Fidelity breached the actual instructions for the transaction.[2] Mot. at 12, ECF No. 166.

In response, Plaintiffs do not contest Fidelity's assertions regarding standing or its compliance with the escrow instructions. In fact, they appear to abandon even the factual allegations above. Instead, they argue that Fidelity breached its "duty of care to Atooi by allowing the transaction to close without obtaining all the required signatures from Atooi." Opp'n at 3, ECF No. 211. Although Plaintiffs' brief is far from clear, they appear to contend that Fidelity failed to follow its internal policy and obtain Atooi Aloha's operating agreement before closing escrow. This, they contend, led to Fidelity's failure to discover that both Andrade and Stanley should have signed on behalf of Atooi Aloha. And they argue that, as a result, a material question of fact exists as to whether Fidelity acted

---

[2] Fidelity also strangely contends that this court "should grant summary judgment in favor of Fidelity since . . . Plaintiffs' claims fail to conform to Fed. R. Civ. P. 8." Mot. at 8-9, ECF No. 166. As counsel should well know, this is not the standard for granting a summary judgment motion.

with "reasonable skill and diligence" in carrying out the escrow instructions. Opp'n at 14.

Initially, the Operating Agreement, without more, does not show that Stanley's signature was required. Plaintiffs point to the language in § 4.1(B) of the Agreement that "all activities or transactions must be approved by the Members," Operating Agreement, ECF No. 212-7 and Plaintiffs' Statement of Fact ¶ 17, ECF No. 212, but they omit the sentence following that clause: "With such approval, the signature of any Members authorized to sign on behalf of the Company is sufficient to bind the Company with respect to the matter or matters so approved." Operating Agreement, § 4.1(B). Such selective quotation is misleading, and counsel are reminded of their duty of candor to the court. Moreover, although § 4.1(C) of the Operating Agreement does require all members' signatures for certain specified matters, Plaintiffs have neither argued, nor offered any evidence to support the conclusion, that this transaction was one such matter.

But even assuming the lack of Stanley's signature creates a factual issue on that point, the fact is immaterial. "The general rule is that an escrow depository occupies a fiduciary relationship with the parties to the escrow agreement or instructions and must comply strictly with the provisions of such agreement or instructions." *DeMello v. Home Escrow, Inc.*, 4 Haw. App. 41, 47, 659 P.2d 759, 763 (1983). "The statutory definition of 'escrow' specifically limits

the depository's function to acts performed 'in accordance with the terms of the agreement between the parties to the transaction.'" *Id*. "Accordingly, an escrow [holder] has no duty to 'police' a transaction for the parties." S*tanton v. Bank of Am, N.A*., 2010 WL 4176375 at *3 (D. Haw. Oct. 19, 2010) (citing *Summit Fin. Holdings, Ltd. v. Cont'l Lawyers Title*, *Co*., 27 Cal.4th 705, 711 (2002) ("[A]n escrow holder has no general duty to police the affairs of its depositors; rather, an escrow holder's obligations are limited to faithful compliance with [the depositors'] instructions.")).

Plaintiffs have pointed to no authority that would support their assertion that Fidelity had a duty to follow anything other than the escrow instructions. In fact, what authority they do cite supports Fidelity. In *Oakview Terrace v. Owens Fin. Corp., Inc.*, 1994 WL 173928 (N.D. Cal. Apr. 19, 1994), plaintiff alleged that a partner had wrongfully encumbered partnership property without the approval of the other partners; it further alleged that the escrow holder knew or should have known of the violation, yet failed to inform the partnership, preventing the partnership from taking preventative action. *Id*. at *1. The court stated that the "ordinary and reasonably expected functions" of an escrow holder may include sheltering parties from certain anticipated harms, "usually the acts or omissions of the other party to the escrow," but that harm by one partner to another "was simply not an injury reasonably contemplated by the escrow." *Id*. at *3.

Further stating that "[t]here is simply no duty on the part of an escrow holder to police the affairs of its depositors" it found the escrow holder had "violated no duty" to the plaintiff. *Id*. at *3-4 (internal quotation marks and citations omitted).

In *Tavenner v. Talon Group*, 2012 WL 6022836 (W.D. Wash. Dec. 4, 2012), the issue was whether the escrow holder had breached its fiduciary duty by "charging and collecting a 'recording fee' in excess of the actual cost of recording the [subject] deed." *Id*. at *3. The court found that "negligence *in carrying out the principal's instructions* violates the fiduciary's duties of skill and diligence." *Id*. at *4 (emphasis added). The instructions in *Tavenner* allowed the escrow holder to "charge a fee for its services as closing agent, an additional, reasonable fee if the nature of the services changed, and any third-party costs incurred in connection with the closing." *Id*. at *3. The court noted that "[t]he obligation to pay for third-party costs [was] described as 'reimbursement' for the closing agent's 'out-of-pocket costs and expenses,'" and it held "[t]he fact that the Escrow Instructions did not specifically preclude defendant from secretly profiting on third-party charges does not mean it was free to do so. The general rule barring a fiduciary from self-dealing should have made it patently obvious that undisclosed mark-ups

///

///

///

11

were forbidden." *Id*. at *3, 4.  Here, there is no dispute that Fidelity abided by the instructions,[3] and there is no similar claim of self-dealing.

Finally, Plaintiffs cite *Clement v. Clement*, 136 B.R. 557 (C.D. Cal. 1992).  The facts of that case are inapposite.  There, the escrow holder acted on an instruction from a single party to the escrow agreement in contravention of the original escrow instructions; the court held that, therefore, the escrow holder may have breached her fiduciary duty to the other escrow party.  *Id*. at 561-62.

An escrow holder's duty is tied to the escrow instructions, which in this case specifically disavowed any duty to determine "the sufficiency or correctness as to form, manner of execution, or validity of any instrument deposited in this escrow" or determine "the identity, authority or rights of any person executing the same."  Sale Escrow Instructions ¶ 20, ECF No. 166-4.  Plaintiffs have not shown any evidence that Fidelity acted contrary to the escrow instructions or that Fidelity failed to use skill and diligence in carrying out those instructions.  Fidelity's motion for summary judgment is GRANTED.[4]

---

[3] At the hearing on the motion, counsel pointed to the instruction stating that Fidelity "is authorized to prepare, obtain, record and deliver the necessary instruments to carry out the terms and conditions of this escrow," Sale Escrow Instructions ¶ 4, ECF No. 166-4, but that instruction does not obligate Fidelity to follow any specific internal policy.

[4] Abigail and the Gaurinos filed a single page "joinder" to Fidelity's motion, in which they state that "[i]n joining said Motion, the Gaurino Defendants seek a determination by this Court that [Plaintiffs] have no standing and fail to state a claim against the Gaurino Defendants as alleged in Plaintiffs [FAC]."  ECF No. 191.  But nothing in Fidelity's motion even remotely

(continued . . .)

12

## B. Owan's Motion for Summary Judgment

Owan complains that the FAC does not sufficiently identify what she "did or did not do to warrant" her inclusion in any of the claims therein. Mot. at 4, ECF No. 202. Although the FAC, like much of the briefing in this case, is far from a model of clarity, Owan makes no attempt to analyze any applicable law in conjunction with the facts. Instead, she bases her argument on a claim wholly incompatible with a summary judgment motion — that the FAC is not based on "true facts." *Id*.

Regarding those facts, Owan admits that she hosted the first BLGM presentation at her office in September 2013. *Id*. at 5 ¶ 1. She also admits that she later forwarded the PowerPoint shown at that presentation to Andrade, and she "accommodated" Andrade by analyzing what they had both "seen and heard of the BLGM opportunity." *Id*. at 7 ¶ 17. She contends, however, that she did not induce or participate in inducing Andrade to invest in BLGM, never endorsed investment in BLGM, and never received any money from the Plaintiffs. *Id*. at 4-8. She further states that she had no involvement whatsoever in the "transfer or conveyance or refinancing" of the Diamond Head Sands Property. *Id*. at 9.

---

(. . . continued)
applies to Plaintiffs claims against Abigail and the Gaurinos. It is also an improper substantive joinder under Local Rule 7.9. Their attempted joinder in Fidelity's motion DENIED.

Plaintiffs disagree and point to Andrade's deposition testimony, which supports their contention that Owan and the Gaurinos jointly made presentations about BLGM as an investment opportunity, guaranteed investors would double or triple their money, and convinced Andrade to purchase BLGM stock. Opp'n at 5-6, 9-12, ECF No. 215; Andrade Dep. at 13, 38-41, 43-44, 173, 257, ECF No. 216-2. Andrade also testified that she gave at least one of her checks to purchase the stock to Owan to give to the Gaurinos and that it was Owan who instructed her to use the name So Chau Pui on the check or checks. Andrade Dep. at 104-07.

Neither party has attempted to compare the facts in this case with the elements of the specific claims alleged in the FAC, but at least some of these clearly disputed facts are obviously highly relevant to determining whether a fraud was perpetrated and by whom. It is not this court's responsibility "to comb through the record in an attempt to discern whether or not there is merit to a motion for summary judgment." *Brann v. Mayo*, 2017 WL 3016960 at *3 n. 2 (W.D. Ark. July 14, 2017; *Cf. Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988) ( "The district judge is not required to comb the record to find some reason to deny a motion for summary judgment."). Because obvious questions of fact exist, and Owan fails to show that she is entitled to judgment as a matter of law, the Motion for Summary Judgment is DENIED.

### C. APT-320's Motion for Summary Judgment and Interlocutory Decree of Foreclosure

APT-320 requests that the court enter a Rule 54(b) judgment in its favor and enter an interlocutory decree of foreclosure. Mot. at 2-3, ECF No. 164. It also requests that the court determine that the Mortgage is a valid lien superior to other interests in the Property; determine further amounts due to it, "including principal, interest, advances, late charges, costs and expense"; appoint a commissioner to sell the Property, subject to confirmation; and reserve jurisdiction to later determine attorney's fees and costs and enter any deficiency judgment following the sale. *Id.*

The motion is unopposed. Therefore, the factual allegations contained in the separate statement of facts, including that Abigail has defaulted on her payment obligations under the Note and Mortgage are deemed admitted. *See* LR 56.1(g) ("For purposes of a motion for summary judgment, material facts set forth in the moving party's concise statement will be deemed admitted unless controverted by a separate concise statement of the opposing party."). Additionally, the Association has filed a Statement of No Opposition specifically acknowledging the priority of APT-320's valid interests. ECF No. 206. APT-320 has met its summary judgment evidentiary burden to establish a prima facie case that it is entitled to foreclose on the Mortgage. *Bank of Am., N.A. v. Reyes-Toledo*, 139 Haw. 361, 367, 390 P.3d 1248, 1254 (2017) ("[T]o prove entitlement to

15

foreclose, the foreclosing party must demonstrate . . . the existence of an agreement, the terms of the agreement, a default by the mortgagor under the terms of the agreement, and giving of the cancellation notice."); *see also* Hawaii Revised Statutes § 667-1.5 (providing for foreclosure by court action).

A foreclosure decree usually orders sale of the property and "contains a direction to [a] commissioner[ ] to make a report of sale and to bring the proceeds into court for an order regarding their disposition." *IndyMac Bank v. Miguel*, 117 Haw. 506, 520, 184 P.3d 821, 835 (Haw. Ct. App. 2008) (quoting *Int'l Sav. & Loan Ass'n, Ltd. v. Woods*, 69 Haw. 11, 17, 731 P.2d 151, 155 (1987)). Under Hawaii law, foreclosure proceedings are normally bifurcated. *See, e.g.*, *City Bank v. Abad*, 106 Haw. 406, 412-13, 105 P.3d 1212, 1218-19 (Haw. Ct. App. 2005) ("[F]oreclosure cases are bifurcated into two separately appealable parts: (1) the decree of foreclosure and the order of sale, if the order of sale is incorporated within the decree; and (2) all other orders.") (quoting *Sec. Pac. Mortg. Corp. v. Miller*, 71 Haw. 65, 70, 783 P.2d 855, 857 (1989)) (other citation omitted).

At the first stage, proof of default is required, although "it is not necessary to determine a sum certain before foreclosure is decreed[.]" *IndyMac Bank*, 117 Haw. at 520, 184 P.3d at 835 (quoting *Bank of Honolulu, N.A. v. Anderson*, 3 Haw. App. 545, 549, 654 P.2d 1370, 1374 (1982)). The second stage

("all other orders") includes an order confirming the sale and a deficiency judgment if the proceeds do not cover the debt. *See, e.g.*, *Beneficial Haw., Inc. v. Casey*, 98 Haw. 159, 165, 45 P.3d 359, 365 (2002); *Hoge v. Kane*, 4 Haw. App. 246, 247, 663 P.2d 645, 646-47 (1983) ("In foreclosure cases which result in a deficiency, the last and final order which starts the clock running is usually the deficiency judgment.").

As discussed herein, the court requests that APT-320 provide for the court's approval and signature an appropriate Foreclosure Decree setting forth the necessary terms and conditions to effectuate the foreclosure process. The parties are to meet and confer in the selection of a proposed foreclosure Commissioner. If the parties are unable to agree on a foreclosure Commissioner, each party may propose a foreclosure Commissioner and submit his or her name and qualifications, and the court will make the final selection of a foreclosure Commissioner.

## V. CONCLUSION

Owan's Motion for Summary Judgment is DENIED. Fidelity's Motion for Summary Judgment is GRANTED, but Abigail and the Gaurino's Motion for Joinder therein is DENIED. APT-320's Motion for Summary

Judgment is GRANTED.  A proposed Foreclosure Decree and selection of a foreclosure Commissioner should be provided to this court by February 12, 2018.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 31, 2018.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Atooi Aloha, LLC v. Gaurino, et al.*, Civ No. 16-00347 JMS-RLP, Order Re: Motions for Summary Judgment and Motion for Interlocutory Decree of Foreclosure