IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MILLICENT ANDRADE, Individually; CRAIG B. STANLEY, Individually; THE EDMON KELLER AND CLEAVETTE MAE STANLEY FAMILY TRUST, by Craig B. Stanley, Successor Trustee; and CRAIG B. STANLEY, Trustee;<br><br>Plaintiffs,<br><br>vs.<br><br>ABNER GAURINO, et al.,<br><br>Defendants. | CIV. NO. 16-00347 JAO-WRP<br><br>**ORDER DISMISSING CLAIMS OF CRAIG B. STANLEY, INDIVIDUALLY; THE EDMON KELLER AND CLEAVETTE MAE STANLEY FAMILY TRUST, BY CRAIG B. STANLEY, SUCCESSOR TRUSTEE; AND CRAIG B. STANLEY, TRUSTEE** |

**ORDER DISMISSING CLAIMS OF CRAIG B. STANLEY, INDIVIDUALLY; THE EDMON KELLER AND CLEAVETTE MAE STANLEY FAMILY TRUST, BY CRAIG B. STANLEY, SUCCESSOR TRUSTEE; AND CRAIG B. STANLEY, TRUSTEE**

On July 8, 2019, jury trial was set to begin in this case. During a status conference prior to jury selection, Plaintiff Craig Stanley had an angry outburst and stormed out of the courtroom while screaming obscenities and making threatening gestures. He later failed to reappear to begin jury selection. Because it is clear that Plaintiff Stanley is unwilling to prosecute this case and will continue to disregard deadlines, orders, and rules, the claims of Plaintiffs Craig B. Stanley, Individually; The Edmon Keller And Cleavette Mae Stanley Family Trust, by Craig B. Stanley,

Successor Trustee ("Trust"); and Craig B. Stanley, Trustee are DISMISSED WITH PREJUDICE.

## I. BACKGROUND

**A.  Facts**

As the parties and the Court are familiar with the history of this case, the Court includes only those facts relevant to the dismissal.

The plaintiffs in this case are Craig Stanley, the Trust, and Stanley's girlfriend Millicent Andrade. Plaintiffs filed the Complaint on June 26, 2016. ECF No. 1. Plaintiffs have had eleven attorneys of record since then, all of whom have withdrawn. *See, e.g.*, ECF No. 76 (withdrawal of Michael Jay Green and substitution of Cades Schutte); ECF No. 88 (order granting pro hac vice applications of Lawrence Ecoff, Alberto Campain, and Ginni Kim); ECF No. 276 (entering order granting Lawrence Ecoff, et al.'s motion to withdraw); ECF No. 382 (order granting Cade Schutte's motion to withdraw); ECF No. 383 (notice of appearance by David Robert Squeri, III); ECF No. 393 (motion to withdraw by David Robert Squeri, III); ECF No. 476 (hearing on William Shipley's oral motion to withdraw).

The revolving door of Plaintiffs' attorneys has substantially delayed this litigation. In March 2018, Mr. Ecoff moved to withdraw after receiving an email from Plaintiff Andrade terminating him as counsel for Plaintiffs, "effective

2

immediately." ECF No. 264 at 4. Another attorney, Dennis Chong Kee, filed his motion to withdraw in December 2018, a month before the case was set to go to trial. ECF No. 374. The Court vacated the January trial date and held a status conference to discuss Plaintiffs' delay tactics. The Court set a firm trial date of July 8, 2019 and informed Plaintiffs that it would not tolerate any more games.

Despite the Court's warnings, Plaintiffs were unable to get along with their next attorney. Mr. Squeri filed a motion to withdraw after only twelve days on the case due to "irreconcilable and unresolvable disputes" and "a breakdown of trust." ECF No. 393 at 3. The Court found good cause for withdrawal and granted Mr. Squeri's motion. ECF No. 396. However, at this point Plaintiffs' repeated attorney hiring and firing had taken substantial time from the Court and caused trial delays. In its February 1, 2019 Order, the Court cautioned Plaintiffs:

> Although withdrawal is being permitted, Plaintiffs are cautioned that further delays will not be tolerated. Plaintiffs have had multiple opportunities to retain new counsel and prepare for trial. The recurring problems between Plaintiffs and their attorneys have prejudiced Defendants, impaired the Court's ability to control its docket, and interfered with the administration of justice. Notably, the issues between Plaintiffs and their attorneys have not been limited to one attorney or one firm, causing the Court to surmise that Plaintiffs are engaging in delay tactics and gamesmanship. The Court will not grant any further continuances or allow further delay tactics. Plaintiffs have until February 14, 2019 to retain new local counsel who is ready, willing, and able to try this case, or serve as local counsel to Mr. Feher (assuming Mr. Feher otherwise qualifies for pro hac vice admission), on July 8, 2019. At the

3

> January 31, 2019 hearing, Mr. Feher represented that he will be prepared to try this case on July 8, 2019.
>
> If Plaintiffs have not retained new counsel by February 14, 2019, Plaintiffs Craig B. Stanley, individually, and Millicent Andrade, individually, will be deemed to have opted to proceed pro se. Claims brought by Plaintiffs Atooi Aloha, LLC and the Edmon Keller and Cleavette Mae Stanley Family Trust will be at risk of dismissal, pursuant to Local Rule 83.6.
>
> . . .
>
> Plaintiffs are reminded that serious consequences will result if they fail to appear at the February 15, 2019 status conference with local counsel who is ready to proceed to trial on July 8, 2019.

*Id.* at 4–6.

On February 14, 2019, William Shipley filed a Notice of Appearance. ECF No. 397. Plaintiffs Andrade and Stanley appeared with Mr. Shipley for the February 15, 2019 status conference and the Court again warned Plaintiffs that trial was set for July 8, 2019 and would not be continued. Mr. Shipley represented he would indeed be ready for trial on that date.

The final pretrial conference took place on June 12, 2019 and the hearing on various motions in limine was held on July 3, 2019, at which Mr. Shipley appeared familiar with the case and prepared for trial. There was no indication that Plaintiffs were having difficulties with their attorney, and the Court expected the case to finally proceed to trial as scheduled.

4

On July 8, 2019, when jury trial was set to begin, the Court held a status conference with Plaintiffs and Defendants present. Potential jurors awaited jury selection in the courthouse. Mr. Shipley informed the Court that he believed his clients wanted to say something to the Court about his performance. Plaintiff Andrade elected to speak and advised the Court of her belief that Mr. Shipley was colluding with defense counsel.[1] Plaintiff Stanley stood up and remarked on, among other things, his past eye surgeries and Hurricane Iwa. Mr. Shipley then advised the Court of his intent to file a motion to withdraw, and, after the Court gave Plaintiffs an opportunity to reconcile with Mr. Shipley, Mr. Shipley orally moved to withdraw as counsel. The Court sealed a portion of the proceeding to discuss the withdrawal with Mr. Shipley and Plaintiffs.

During the sealed portion of the hearing,[2] while Mr. Shipley was speaking to the Court, Plaintiff Stanley stood up and began yelling. Plaintiff Stanley told those in the courtroom "shut up," "it's all bullshit," "you guys are crazy," "fuck you guys," "you guys are all shit," and "you're all fucked." Tr. of R. at 11–13, July 8, 2019, ECF No. 477. He attempted to exit the courtroom while yelling, "Hey Bill [Shipley], you'd better shut your fucking mouth." *Id.* at 12. Although the

---

[1] Defendants' attorneys were visibly shocked when they heard this, and the Court has no reason to believe Mr. Shipley was colluding with the defense.

[2] The Court sealed this portion of the hearing because it anticipated the participants would disclose communications protected by the attorney-client privilege. The Court does not disclose any of those communications here.

courtroom was locked because the hearing was sealed, court staff allowed Plaintiff Stanley out of the courtroom for everyone's safety. Plaintiff Stanley walked out of the courtroom and absented himself from the proceedings. Mr. Shipley informed the Court that there were two other instances that morning when Plaintiff Stanley had walked toward the exit in an angry rage.[3]

The hearing was then unsealed and Defendants and defense counsel returned to the courtroom. Defense counsel informed the Court that after Plaintiff Stanley exited the courtroom, he threatened them. He approached Defendants and defense counsel with his hands raised, yelled obscenities with his middle fingers up, called them liars and crooks, and said his father and brother were war veterans. They said they were frightened and had to ask the U.S. Marshals Service to intervene.

The Court noted Plaintiffs' lack of objection to Mr. Shipley's motion to withdraw, granted the motion, and instructed Plaintiff Andrade that, as warned, she would proceed pro se. The Court then dismissed with prejudice Plaintiff Atooi Aloha, LLC's claims, pursuant to Local Rule 83.11.[4] The Court warned Plaintiff

---

[3] Although Mr. Shipley made this representation during the sealed portion of the hearing, the Court finds that this representation does not fall within the scope of attorney-client privilege because it was not a "confidential communication made for the purpose of facilitating the rendition of professional legal services." *See* Haw. Rev. Stat. § 626-1.

[4] Local Rule of Practice for the District of Hawaii 83.11 states:
  Business entities, including but not limited to corporations,
(continued . . . )

Andrade that Plaintiff Stanley would not be allowed to have outbursts, stand up out of turn, swear, or otherwise frighten those in the courtroom. The Court instructed Plaintiff Andrade to advise Plaintiff Stanley of the Court's rulings on his conduct, and then recessed to allow her to find him.

Court resumed after the recess and Plaintiff Stanley was not present. Plaintiff Andrade was sworn and questioned by the Court about his whereabouts. Plaintiff Andrade represented that she did not know where he was. She did, however, have his phone number. The Court warned Plaintiff Andrade that if Plaintiff Stanley did not show up to court and behave, his and the Trust's claims would be dismissed. The Court also reminded Plaintiff Andrade of the Court's ruling on the Gaurino Defendants' eighth motion in limine, which precluded Plaintiff Stanley from using racial slurs or conclusory criminal characterizations. ECF No. 426. The Court asked Plaintiff Andrade to provide the Courtroom Manager with Plaintiff Stanley's phone number.

The Court took another recess—of two hours—to allow Plaintiff Andrade to find Plaintiff Stanley and bring him to court, and to give the Courtroom Manager an opportunity to contact Plaintiff Stanley via phone. Court resumed two hours

---

partnerships, limited liability partnerships, limited liability corporations, and community associations, cannot appear before this court *pro se* and must be represented by an attorney.
Local Rule 83.11. The Court also advised Plaintiffs in its February 1, 2019 Order that Atooi Aloha, LLC could not proceed without an attorney.

later, and Plaintiff Stanley was not present. At this point, potential jurors had been waiting in the courthouse for hours. The Courtroom Manager informed the Court that she had called Plaintiff Stanley twice, and left voicemail messages informing him that he was to report back or risk dismissal of his claims. Plaintiff Andrade said she had spoken to Plaintiff Stanley during the recess and warned him that his claims would be dismissed if he did not return. She informed the Court that Plaintiff Stanley was still upset and refused to return. Defendants Abner, Abigail, and Aurora Gaurino moved to dismiss the claims of Plaintiffs Stanley and the Trust with prejudice pursuant to Federal Rule of Civil Procedure 41(b).

For the reasons stated below, the Court DISMISSES WITH PREJUDICE the claims of Plaintiffs Stanley and the Trust.

## II. LEGAL ANALYSIS

### A. Rule 41(b) Legal Standard

Federal Rule of Civil Procedure ("FRCP") 41(b) states:

> If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision . . . operates as an adjudication on the merits.

Fed. R. Civ. P. 41(b).

Involuntary dismissal with prejudice is appropriate when a weighing of the following factors favors dismissal: (1) the public's interest in expeditious

8

resolution of litigation, (2) the court's need to manage its docket, (3) the risk of prejudice to defendants, (4) the availability of less drastic alternatives, and (5) the public policy favoring disposition of cases on the merits. *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002).

**B.      Discussion**

The Court finds that the *Pagtalunan* factors support dismissal with prejudice.

   **i.      Public's Interest in Expeditious Resolution**

The public's interest in expeditious resolution "always favors dismissal." *Pagtalunan*, 291 F.3d at 642 (quoting *Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999)). Plaintiff Stanley's refusal to attend trial, failure to comply with Court deadlines and orders, and failure to prosecute prevented the timely progression and resolution of this case.

   **ii.     The Court's Need to Manage its Docket**

The second factor weighs heavily in favor of dismissal. The Court, not Plaintiffs, should control the pace of the docket. *Yourish*, 191 F.3d at 990. "It is incumbent upon the Court to manage its docket without being subject to routine noncompliance of litigants." *Pagtalunan*, 291 F.3d at 642 (citing *Ferdik*, 963 F.2d at 1261). Plaintiff Stanley's refusal to proceed with trial as scheduled and comply with court orders has interfered with the Court's ability to manage its docket.

Plaintiff Stanley's failures have consumed much of the Court's time and resources, including the time, energy, and money devoted to assembling a jury. Additionally, the Court has repeatedly held status conferences and pre-trial hearings addressing Plaintiffs' shenanigans.

### iii. Risk of Prejudice to Defendants

The risk of prejudice to Defendants weighs in favor of dismissal. "When a party offers a poor excuse for failing to comply with a court's order, the prejudice to the opposing party is sufficient to favor dismissal." *Foster v. Jacquez*, No. CV 09-01406 JFW (SS), 2009 WL 1559586, at *3 (C.D. Cal. May 28, 2009) (citing *Yourish,* 191 F.3d at 991–92). In addition, "Unnecessary delay inherently increases the risk that witnesses' memories will fade and evidence will become stale." *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002). Plaintiff Stanley has interfered with Defendants' ability to proceed to trial by repeatedly failing to adhere to the trial schedule, frightening the parties and their lawyers, and refusing to appear. Plaintiff Stanley did not provide any excuse for these failures, and in fact never contacted the Court after he stormed out of the courtroom on July 8, 2019.

### iv. Availability of Less Drastic Alternatives

Under the present circumstances, less drastic alternatives are unavailable or would be ineffective. Plaintiffs have a long history of disregarding deadlines and

court orders, and have not responded to less drastic consequences. For example, in its August 8, 2017 Order the Court compelled Plaintiffs to respond to the Gaurino Defendants' interrogatories and provide deposition dates. ECF No. 92 at 7. The Plaintiffs cited health issues and deterioration of the attorney-client relationship as reason for the delay. *Id.* at 1. Finding the delay unjustified, the Court ordered Plaintiffs to pay Defendants' reasonable expenses in bringing the motion. *Id.* at 7.

Despite this sanction, Plaintiffs continued to disrespect Court deadlines and orders. For example, the Court told Plaintiffs to appear in person at a January 16, 2019 status conference. Plaintiffs failed to appear and provided no explanation for their violation of the Court's orders.

Another example of Plaintiffs repeated noncompliance is their multiple attempts to delay proceedings by firing their attorneys. The Court has afforded Plaintiffs multiple opportunities to find an attorney, granting continuances and holding hearings to allow Plaintiffs to explain their failures. Throughout all of this, the Court warned Plaintiff Stanley about the consequences of noncompliance. It is only after providing Plaintiff Stanley multiple opportunities to follow court orders and prosecute his case that the Court must dismiss his claims.

Plaintiff Stanley's behavior throughout this litigation demonstrates that any attempt to compel his appearance or compliance with court orders would be futile. Repeated threats of dismissal could not compel Plaintiff Stanley to obey court

orders, appear in court, or prosecute his case. Accordingly, this factor supports dismissal.

v. **Public Policy Favoring Disposition on the Merits**

Finally, the fifth *Pagtalunan* factor weighs against dismissal, as "public policy strongly favors disposition of actions on the merits." *Yourish v. California Amplifier*, 191 F.3d 983, 992 (9th Cir. 1999).

Given that four of the five *Pagtalunan* factors favor dismissal, the claims of Plaintiffs Stanley and the Trust are DISMISSED for failure to comply with court orders and rules, and for failure to prosecute.

### III. CONCLUSION

For the reasons stated above, the claims of Plaintiffs Stanley and the Trust are DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Dated: Honolulu, Hawai'i, July 15, 2019.



   /s/   Jill A. Otake       
Jill A. Otake
United States District Judge

CIVIL NO. 16-00347 JAO-WRP; *ANDRADE v. GAURINO*; ORDER DISMISSING CLAIMS OF CRAIG B. STANLEY, INDIVIDUALLY; THE EDMON KELLER AND CLEAVETTE MAE STANLEY FAMILY TRUST, BY CRAIG B. STANLEY, SUCCESSOR TRUSTEE; AND CRAIG B. STANLEY, TRUSTEE